1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9   United States of America,                    No. CR-24-03268-001-TUC-SHR (LCK)

10                      Plaintiff,                **Order Adopting R&R**

11   v.

12   Darwin Rita-Luna,

13                      Defendant.

14

15

16          Pending before the Court is a Report and Recommendation ("R&R") (Doc. 62)

17   issued by United States Magistrate Judge Maria S. Aguilera recommending the Court deny

18   Defendant's Motion to Dismiss the Indictment (Doc. 19).    Defendant has filed an

19   Objection.    (Doc. 65.)    For the following reasons, the Court adopts the R&R over

20   Defendant's Objection.

21   **I.    Background[1]**

22          The following summarizes the circumstances underlying this R&R:

23                  Defendant, a native and citizen of Mexico, first entered the
                    United States in 2008, when he was 17 years old. (Doc. 46 at
24                  6–7, 14.) He lived in Tennessee with his uncle until October
                    2010, when he briefly returned to Mexico to visit his ailing
25                  mother. (*Id.* at 14–16.) In January 2011, he was apprehended
                    by United States Border Patrol agents after crossing back
26

27   ───────────────
     [1] Neither party has objected to the Magistrate Judge's findings of fact, and this Court
28   adopts them herein.

illegally into Arizona. (*Id.* at 20–21.) He was placed in expedited removal proceedings and then deported to Mexico. (Pl.'s Ex. 3.)

Defendant has been deported from the United States several times since then, each time based on the 2011 order of removal. (Doc. 46 at 42–44.) He was apprehended in Arizona again in May 2024 and later indicted for illegal reentry. (Docs. 1, 8.) He filed a motion to dismiss, arguing that the 2011 removal order is constitutionally deficient and thus cannot serve as a predicate for his reentry charge. (Doc. 19.) The matter was set for an evidentiary hearing. (Docs. 30, 31, 38.)

At the hearing, the Government presented the testimony of Border Patrol Agent Nestor Espino, the agent who conducted Defendant's expedited removal proceeding. Agent Espino did not recall his interaction with Defendant, so he testified about his routine practices for such proceedings. (Doc. 36 at 15.) He testified that he obtains an alien's biographical information and fingerprints to determine whether the alien is already subject to an order of removal; if not, then he conducts an expedited removal. (*Id.* at 19.) He stated that he conducts the proceeding in the language specified in the forms, translates all information in each form, records the alien's answers to questions verbatim, translates the answers back, gets supervisory approval, and gives the alien copies of the completed forms. (Doc. 36 at 26–42, 44–47; Doc. 37 at 10–13, 24–25, 37–38, 77.)

Defendant testified at the hearing on his own behalf. He stated that Agent Espino asked him "simple" questions about his background, told him that he would be deported for five years, and directed him to sign certain forms. (Doc. 46 at 22, 28, 45.) However, he testified that Agent Espino never translated the forms, never read his answers back to him, and failed to give him copies of the forms. (*Id.* at 26–36.) He also testified that he was never given the opportunity to explain that the reason he left Mexico was to escape his physically abusive stepfather. (*Id.* at 33.) He says that his entire encounter with Agent Espino lasted no more than two to three minutes. (*Id.* at 22–23.)

(Doc. 62 at 1–2.) Defendant moved to dismiss the indictment charging him with illegal reentry, arguing various aspects of the 2011 expedited removal violated his due process

rights. (Doc. 19 at 8–12.) After conducting an evidentiary hearing, the Magistrate Judge issued her R&R, recommending the Court deny Defendant's Motion to Dismiss because the underlying expedited removal was not fundamentally unfair. (*See generally* Doc. 62.)

Defendant filed an Objection and Motion for *De Novo* Review of the R&R (Doc. 65), which contends the R&R errs in six ways: (1) in concluding Agent Espino's failure to Obtain Defendant's signature and initials pages of I-867AB did not amount to a due process violation; (2) in concluding Agent Espino's failure to obtain Defendant's signature on the I-860 form was not a due process violation; (3) by failing to address Agent Espino's admission he did not consider Defendant for withdrawal of application for admission pursuant to the Inspector's Field Manual; (4) in finding Agent Espino's testimony was largely credible in light of contradictory statements; (5) in determining Defendant's testimony was not credible; and (6) in concluding there were no plausible grounds for relief.

## II.  Standard of Review

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Ninth Circuit has summarized the role of district courts in reviewing R&Rs as follows:

> The magistrate judge system was designed to alleviate the workload of district courts. . . . To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court. Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. . . . Equally important, requiring the district court to hear evidence not previously presented to the magistrate judge might encourage sandbagging. [I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable

1   recommendation—shift gears before the district judge.

2   *United States v. Howell*, 231 F.3d 615, 621–23 (9th Cir. 2000). Accordingly, "the district

3   judge must review the magistrate judge's findings and recommendations de novo *if*

4   *objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

5   (9th Cir. 2003) (en banc) (emphasis in original). However, objections to R&Rs "are not to

6   be construed as a second opportunity to present the arguments already considered by the

7   Magistrate Judge." *Betancourt v. Ace Ins. Co. of Puerto Rico*, 313 F. Supp. 2d 32, 34

8   (D.P.R. 2004); *see also Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F.

9   Supp. 380, 382 (W.D.N.Y. 1992) ("The purpose of the Federal Magistrates Act is to relieve

10  courts of unnecessary work" and "[t]here is no increase in efficiency, and much extra work,

11  when a party attempts to relitigate every argument which it presented to the Magistrate

12  Judge.").

13  **III.   Relevant Law**

14  A person can be charged with illegal reentry if he or she "has been . . . deported, or

15  removed . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the

16  United States." 8 U.S.C. § 1326(a). When charged with violating § 1326, the defendant

17  has a right under the Due Process Clause of the Fifth Amendment to collaterally challenge

18  the removal order underlying the charge of illegal reentry. *United States v. Ubaldo-*

19  *Figueroa*, 364 F.3d 1042, 1047–48 (9th Cir. 2004). Congress has codified this right and

20  its attendant conditions. *See* 8 U.S.C. § 1326(d).

21  To successfully mount a collateral attack under § 1326(d), the defendant must

22  demonstrate the following: (1) he or she "exhausted any administrative remedies" for relief

23  against the order; (2) the removal proceedings "improperly deprived the alien of the

24  opportunity for judicial review;" and (3) the order was "fundamentally unfair." *Id.* "[E]ach

25  of the[se] statutory requirements . . . is [typically] mandatory." *United States v. Palomar-*

26  *Santiago*, 593 U.S. 321, 329 (2021). However, the law does not provide for administrative

27  or judicial review of expedited removals of inadmissible arriving noncitizens unless a

28  noncitizen claims asylum or claims to be a legal permanent resident. 8 U.S.C.

- 4 -

§ 1225(b)(1)(C); *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081 (9th Cir. 2011); *see also United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014) (finding defendant exhausted available administrative remedies and was deprived of judicial review in expedited removal proceeding with no opportunity for administrative or judicial review). Thus, the first two prongs are satisfied when a defendant did not claim asylum or claim to be a legal permanent resident and later challenges an expedited removal. *See United States v. Ochoa-Oregel*, 904 F.3d 682, 685 (9th Cir. 2018) ("An alien who had been removed through expedited removal proceedings automatically satisfies the requirements for exhaustion and deprivation of judicial review.").

A removal order is fundamentally unfair if "(1) [a defendant's] due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result." *Ubaldo-Figueroa*, 364 F.3d at 1048 (alteration in original) (citation omitted). A defendant need only show it was "plausible" he would not have been removed to demonstrate prejudice. *United States v. Muro-Inclan*, 249 F.3d 1180, 1184 (9th Cir. 2001). In other words, a defendant must show he had "plausible grounds for relief from removal in the form of withdrawal of his application for admission" based on the Inspector's Field Manual. *Raya-Vaca*, 771 F.3d at 1206. The Manual directs "officers to consider all relevant facts and circumstances," including "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *United States v. Flores*, 901 F.3d 1150, 1162 (9th Cir. 2018) (citations omitted).

**IV.    Analysis**

Having conducted a de novo review,[2] the Court adopts the R&R's reasoning and conclusion. Therefore, the Court will deny the Motion to Dismiss.

---

[2] The Court has carefully reviewed the entire record, including but not limited to transcripts of the evidentiary hearing, the parties' briefs, and evidence submitted to the Magistrate Judge. The Court has also reviewed the authorities cited by the parties and by the Magistrate Judge.

1       The first part of Defendant's Objection addresses the Magistrate Judge's due
2   process analysis as it relates to two forms which lack Defendant's signature or otherwise
3   do not comply with the relevant regulations. (*See* Doc. 65 at 1–8.) Defendant asserts the
4   Magistrate Judge erred in concluding Agent Espino's failure to obtain Defendant's
5   signature and initials on each page of the Form I-867A did not amount to a due process
6   violation. (*Id.* at 1.) The Magistrate Judge held, although Agent Espino may have violated
7   8 C.F.R. § 235.3 by failing to have Defendant sign and initial each page of the Form I-
8   867A, this regulatory violation did not rise to the level of a due process violation because
9   the regulation did not, in and of itself, protect a person's right to notice and an opportunity
10  to respond. (Doc. 62 at 5–8.) The Magistrate Judge did not err in this conclusion.

11      Defendant contends the Magistrate Judge chose to rely on an unpublished Ninth
12  Circuit case, *United States v. Mazariegos-Mazariegos*, No. 20-10316, 2022 WL 832071,
13  at *2 (9th Cir. 2022), instead of persuasive out of district, district court cases. (Doc. 65 at
14  2–3.) Defendant notes those district court cases are "not binding on this Court," but "the
15  analyses contained in those decision[s] are much more in-depth and far better reasoned
16  than *Mazariegos*." (*Id.* at 2.) The Court's role is to decide whether Agent Espino's failures
17  in this case deprived Defendant of notice and an opportunity to respond, *Raya-Vaca*, 771
18  F.3d at 1204, not to decide whether an unpublished Ninth Circuit case or other district court
19  cases are more analogous. The Magistrate Judge cited *Mazariegos* to supplement her
20  analysis, not as the primary authority for her conclusion as to the Form I-867A. She
21  primarily cited the rule from *Raya-Vaca* and analyzed how that rule applies to the
22  regulation at issue, relying on *Mazariegos* only as supplemental support for her conclusion
23  under the *Raya-Vaca* rule. (Doc. 62 at 8.) Because the Court agrees Agent Espino's failure
24  to obtain Defendant's signature on the Form I-867A did not deprive Defendant of notice
25  and an opportunity to respond[3], this aspect of Defendant's objection is legally insignificant.

26
27      [3] In its response, the Government noted "8 U.S.C. § 235.3(b)(2) does not require an
    alien's signature on both the I-867A and I-867B." (Doc. 69 at 2 n.2.) Because the Court
28  agrees with the Magistrate Judge's assessment regarding the result, i.e. despite no signature
    on Defendant's I-876A he was still afforded notice and an opportunity to respond, the Court
    will not decide the scope of the regulation de novo.

Next, Defendant asserts the Magistrate Judge erred in concluding Agent Espino's failure to obtain Defendant's signature on the I-860 form was not a due process violation. (Doc. 65 at 5.) The analysis regarding Form I-867A above and Form I-860 here are virtually the same, and "Defendant's own testimony indicates that he was advised of the charge." (Doc. 62 at 9.) Especially given Judge Aguilera's findings based on the testimony at the evidentiary hearing and the forms themselves, which the Court finds well supported by the record as detailed below, the Court concludes the failure to obtain a signature on the Form I-860 did not deprive Defendant of notice and an opportunity to be heard.

Contrary to Defendant's third assertion, Judge Aguilera did address Agent Espino's admission he did not consider Defendant for withdrawal of application for admission. (*See* Doc. 62 at 4–5; Doc. 65 at 8.) Defendant merely disagrees with the way Judge Aguilera addressed this admission and her conclusion regarding the import of this admission to the fundamental fairness analysis. Insofar as Defendant asserts Agent Espino's admission undermines Judge Aguilera's due process analysis, the Court finds this admission does not indicate Agent Espino deprived Defendant of an opportunity to respond by failing to inquire more about the factors which may have supported withdrawal of application for admission. Agent Espino's admission did not indicate he prevented or blocked Defendant from volunteering the information necessary to assess Defendant's unique facts and circumstances. Due process does not require an agent to read the mind of the defendant and inquire regarding all relevant facts and circumstances. Only an opportunity to respond is required.

Regarding the prejudice prong, Defendant seems to assert Agent Espino's admission renders prejudice a foregone conclusion. (See Doc. 65 at 10–11.) Not so. Despite his admission, the bulk of Agent Espino's testimony indicates he provided Defendant ample opportunity to raise grounds for relief, despite his belief (flawed or not) that such relief was not being offered to any applicants for admission at the time. Just because Agent Espino's testimony establishes he perceived there to be a zero-tolerance policy at the time such that he could not consider Defendant for withdrawal of admission does not mean, if Agent

1   Espino were under a different impression, Defendant would have a more plausible case for
2   relief.    In fact, as noted by Judge Aguilera, the Inspector's Field Manual explains
3   "'workload' can be a 'less significant' factor in determining whether to grant relief." (Doc.
4   62 at 13 (quoting Def.'s Ex. 30 at 1).) Therefore, Judge Aguilera appropriately found this
5   admission comports with the Manual's guidance on reduced plausibility of relief when
6   agents are tasked with responding to surges in applicants for admission and the agents'
7   increased workload.

8         Defendant asserts Judge Aguilera erroneously found Agent Espino's testimony was
9   largely credible despite some contradictory or confounding statements. (Doc. 65 at 11–
10  12.) The Court finds Judge Aguilera properly accounted for Agent Espino's contradictions.
11  Judge Aguilera acknowledged "issues" with Agent Espino's testimony, noting he appeared
12  unsure about certain aspects of the law, but found, consistent with Defendant's own
13  testimony, Agent Espino's testimony regarding how he conducts expedited removal
14  proceedings credible. (Doc. 62 at 5.) Notably, none of the inconsistencies Defendant
15  points out render the Magistrate Judge's findings incorrect.

16        Similarly, Judge Aguilera did not err in determining Defendant's testimony was
17  largely not credible. Defendant mainly objects to this finding because he suggests Agent
18  Espino had more inconsistencies in his testimony and more motive to testify in his personal
19  interest than Defendant. (*See* Doc. 65 at 17–20.) However, the Court on its de novo review
20  concurs with Judge Aguilera's credibility findings. The Magistrate Judge found Defendant
21  "plainly had a motive to misrepresent what occurred," and pointed out inconsistencies in
22  Defendant's testimony. (Doc. 62 at 4.) Defendant asserts, given Agent Espino's failure to
23  follow the regulations, "he similarly had a plain motive to misrepresent what occurred."
24  (Doc. 65 at 19.) Yet the Court finds this assertion lacks plausibility because what is at
25  stake for each testifying witness is vastly different. The Court finds Defendant's attempt
26  to analogize the motive to lie for a Defendant facing criminal penalties to that of a person
27  who may have made a legally insignificant mistake in filling out paperwork 14 years ago
28  not compelling, especially when no clear repercussions for any such failure were elicited

in Agent Espino's testimony.  The Court also agrees with Judge Aguilera's finding Defendant "avoided answering straightforward questions about whether a certain form was filled out at the time he signed it" and Defendant's testimony overall lacked plausibility. (Doc. 62 at 4.)  The credibility analysis performed by the Magistrate Judge was not fundamentally flawed.

Lastly, the Court finds the Magistrate Judge did not err in concluding there were no plausible grounds for relief.  Defendant argues the Magistrate Judge "simply and completely ignored the one dispositive factor"—"between October 30, 2010 and April 8, 2011, both before and after the challenged expedited removal, Border Patrol had itself decided [Defendant's] circumstances warranted relief, twice granting him voluntary return." (Doc. 65 at 20.)  Upon a de novo review, the Court determines the relief offered prior to and after the challenged expedited removal is not dispositive of prejudice.  Even assuming the six-factor test weighed in his favor, Defendant still could have been denied relief based on the more minor factor of workload, as noted above.  And, this relief is ultimately discretionary, so even then Defendant may still not have been offered relief depending on the circumstances at an exact moment in time.  Therefore, the fact Defendant asserts is "dispositive" is not, and it was appropriate for the Magistrate Judge to account for it as she did.

Based on the forgoing analysis, the Court finds the underlying expedited removal did not violate Defendant's due process rights, and, even if it had, Defendant did not suffer prejudice as a result.

**V.     Conclusion**

**IT IS ORDERED** the Report & Recommendation (Doc. 62) is **ADOPTED**.

**IT IS FURTHER ORDERED** the Motion to Dismiss (Doc. 19) is **DENIED**.

Dated this 15th day of August, 2025.

Honorable Scott H. Rash
United States District Judge